IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 319-003 |
| | ) | |
| TREMAYNE O. LINDER | ) | |
| LAKESIA L. HARDEN | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Defendants seek suppression of marijuana, methamphetamine, and a firearm discovered by police in the bedroom closet of a residence shared by Defendants. After careful consideration of the legal briefs and evidence presented at the hearing on May 22, 2019, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to suppress, (doc. nos. 44-46), be **DENIED**. A strong odor of green marijuana provided reasonable suspicion for the warrantless search, and reasonable suspicion was sufficient in light of Defendant Tremayne Linder's state probationary status, the Fourth Amendment waiver and search consent contained in supplemental conditions to his state probationary terms, and Defendant Lakesia Harden's failure to voice any objection to the search.

## I.    FACTS

On February 6, 2019, the grand jury in the Southern District of Georgia charged Defendants with one count of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and Defendant Linder with one count of receipt of a firearm by a person under indictment in violation of 18 U.S.C. § 922(n).

(Doc. no. 1.)  The search and seizure giving rise to these federal charges occurred on April 9, 2018, as a direct consequence of Defendant Linder being on state probation since March 21, 2016.  On the latter date, Laurens County Superior Court Judge Donald W. Gillis sentenced Defendant Linder to a twenty-year probated sentence for burglary and criminal attempt to commit armed robbery.  (Doc. no. 56-1.)

Defendant Linder's original conditions of probation did not include a Fourth Amendment waiver and consent to warrantless search of his home.  (Id.; doc. no. 46-2.) However, on January 11, 2018, Defendant Linder met with Probation Officer Tim Ray, admitted to using narcotics in violation of his general probation conditions, and tested positive for marijuana.  (Court's recording system, *For the Record* ("FTR"), 11:23:20 – 11:33:05; 11:42:00 – 11:43:05.)  To avoid a revocation hearing and the prospect of imprisonment, Defendant Linder signed a court order on January 11, 2018, whereby he waived his right to a revocation hearing, confirmed his positive drug test, accepted entry into the Department of Community Services Daily Reporting Center program ("DRC"), and agreed to comply with all DRC rules and regulations.  (FTR 11:23:20 – 11:33:05; 11:42:00 – 11:43:05; doc. no. 56-2.)  Defendant Linder also signed DRC special conditions of probation that are mandatory for entry into the program.  (Doc. no. 56-3; FTR 11:28:20 – 11:33:05.) Officer Ray signed both documents with Defendant Linder on January 11, 2018, and Judge Gillis signed them the following day.  (FTR 11:23:20 – 11:33:05; 11:42:00 – 11:43:05; doc. no. 56-2.)  Defendant Linder signed all of the documents concerning the DRC program in the presence of Officer Ray, he was not represented by legal counsel at that time, and he never appeared before Judge Gillis.  (FTR 11:23:20 – 11:33:05; 11:41:15 – 11:43:05.)

Included in the DRC special conditions is the following Fourth Amendment waiver

and consent to search condition:

> Probationer shall submit to a search of his (her) person, residence, papers, vehicle, and/or effects as these terms of the Fourth Amendment to the United States Constitution are defined by the Courts, any time of the day or night with or without a search warrant whenever requested to do so by a Probation Supervisor or any law enforcement officer and specifically consents to the use of anything seized as evidence in a judicial or disciplinary proceeding.

(Doc. no. 56-3.)  Defendant Linder was also required to report to Officer Ray as directed and

permit Officer Ray to visit him at his home.  (Id.)

On April 5, 2018, Judge Gillis issued a warrant for Defendant Linder's arrest because

of unexcused absences from mandatory DRC meetings.  (Doc. no. 56-4.)  On April 9, 2018,

Officer Ray and City of Dublin Police Sergeant Eric Roland arrived at Defendant Linder's

home to arrest him.  (FTR 10:39:30 – 10:40:45.)  Officer Ray arrived first and spoke with

Defendant Harden, Defendant Linder's girlfriend and cohabitant.   (FTR 10:39:30 –

10:40:45.)  Sergeant Roland arrived shortly thereafter and turned on his body camera.  (See

Body Camera, doc. no. 44-5, 00:00-00:10.)   Defendant Harden informed the officers

Defendant Linder was at a DRC meeting.  (Id. at 00:00-03:00.)  Officer Ray confirmed by

telephone Defendant Linder was not at DRC and informed Defendant Harden.  (Id. at 01:30-

5:00.)

Defendant Harden invited Officer Ray and Sergeant Roland to enter the home and

look for Defendant Linder, stating "you can come look if you want to."  (Id.)  Sergeant

Roland responded by asking if he could come inside, and Defendant Harden confirmed he

could.  (Id.)  Sergeant Roland entered the home while Officer Ray remained in the door

frame with the door open.  (Id. at 00:30-1:30.)  Inside the home were Defendant Harden, her sister Tamara Harden, and a young child.  (Id.)  Defendant Linder was not there, and all occupants in the house were sitting in the living room.  (Id.)

Once inside, Sergeant Roland confirmed with Officer Ray the existence of the warrantless search condition quoted above.  (Id. at 01:30-02:30.)  Both officers detected a strong odor of green marijuana, which they could smell both inside and outside the home, and confronted Defendant Harden about it.  (Id. at 02:00-03:00.)  Sergeant Roland asked Defendant Harden "since [Defendant Linder] has search conditions is there anything in here we need to know about?"  (Id.)  She responded "no."  (Id.)  Sergeant Roland said it smelled like marijuana, to which she explained a friend smoked marijuana in the home the night before.  (Id.)  Sergeant Roland explained it smelled like green marijuana, which he confirmed at the suppression hearing he recognized based on his police training and experience.  (Id.; FTR 10:44:00 – 10:45:05.)  Tamara Harden attempted to leave the room, and Sergeant Roland requested she remain seated in the living room because "we're probably about to conduct a search on this residence."  (Body Camera, 02:30-03:00.)  Tamara Harden explained she lived in Atlanta and was visiting her sister.  (Id. at 03:00-4:00.)

Sergeant Roland exited the home to confirm again with Officer Ray that Defendant Linder had signed a waiver and consent to search as part of his state probation.  (Id. at 05:00-7:00.)  By telephone, Officer Tony Karmazinas confirmed existence of the search condition to Officer Ray and Sergeant Roland.  (Id.)  Sergeant Roland reentered the home and pronounced into his radio, while standing in the living room in the presence of Defendant Harden, his intention to conduct a search of the residence based on the probation search

condition.   (Id. at 06:30-6:50.)   Defendant Harden expressed no objection and did not respond in any way to this pronouncement, and Sergeant Roland proceeded to conduct the search.  (Id. at 6:45-10:00.)

Because the smell of marijuana was so strong, Sergeant Roland testified, it took him little time to find the marijuana inside a backpack stored in the closet of Defendants' shared bedroom.   (Id.; FTR 10:46:00 – 10:47:55.)   The backpack contained marijuana and methamphetamine wrapped in twelve small bags.  (Body Camera, 6:30-10:00; FTR 10:47:56 – 10:50:15.)  In the same bedroom, Sergeant Roland also found a prison guard uniform with Defendant Harden's name on it.  (Body Camera, 6:30-10:00; FTR 10:50:16 – 10:52:00.)

## II.   DISCUSSION

Defendants argue the search violated the Fourth Amendment because there was no warrant, there was no probable cause based on exigent circumstances, and the probation condition allowing warrantless searches is invalid.  (Doc. nos. 44, 46.)  Defendant Harden further argues for suppression of statements she made after her arrest as fruits of the poisonous tree.  (Doc. no. 45.)  The Court finds the search was constitutional because (1) Defendant Linder, as a state probationer with a search condition, had a diminished expectation of privacy that subjected him to warrantless searches based on reasonable suspicion; (2) the strong odor of green marijuana emanating from Defendant's residence created reasonable suspicion; and (3) the search was valid as to Defendant Harden because she did not voice any objection to the search.

**A.**     **Defendant Linder's Status as a Probationer with a Search Condition Diminished His Expectation of Privacy and Allowed Warrantless Searches Based on Reasonable Suspicion**

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The Fourth Amendment generally requires a search warrant with probable cause to search a person's home, and searches conducted without a search warrant are considered "per se unreasonable under the Fourth Amendment [and are] subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).  Therefore, courts "'examine the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." Samson v. California, 547 U.S. 843, 848 (2006) (quoting United States v. Knights, 534 U.S. 112, 118-19 (2001)).  This is because "[t]he touchstone of the Fourth Amendment is reasonableness," determined by "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Knights, 534 U.S. at 118-19 (internal quotation marks and citations omitted).

Although the Fourth Amendment's protection against unreasonable searches and seizures applies to probationers like Defendant Linder, they "may be subject to restrictions that diminish [their] reasonable expectations of privacy," such as conditions of probation allowing warrantless searches. United States v. Boynton, 337 F. App'x 801, 803 (11th Cir.

2009); Owens v. Kelley, 681 F.2d 1362, 1367 (11th Cir. 1982). "Such limitations are permitted because probationers have been convicted of crimes and have thereby given the state a compelling interest in limiting their liberty in order to effectuate their rehabilitation and to protect society." Owens, 681 F.2d at 1367. To determine whether a warrantless search of a probationer's home based on reasonable suspicion is constitutional, courts consider the totality of the circumstances and balance the intrusion of the search on a probationer's privacy against the governmental interests of monitoring that probationer for rehabilitation and protection of society. See Knights, 534 U.S. at 118-19 (holding warrantless search of probationer's apartment reasonable because of probationary status and search condition).

"[T]he presence of a search condition is but one 'salient circumstance' to consider." United States v. Yuknavich, 419 F.3d 1302, 1309 (11th Cir. 2005) (quoting Knights, 534 U.S. at 118)). There is considerable government interest in supervising probationers because they are more likely to violate the law and more likely to destroy incriminating evidence, given their knowledge proof beyond a reasonable doubt and the right to jury trial do not apply at probation revocation hearings. Id.; Knights, 534 U.S. at 120. Courts consider the specific circumstances of each case, not just the presence or absence of a search condition, in determining the extent of diminution to a probationer's privacy interest.

Here, the undisputed facts show Defendants Linder's expectation of privacy was severely diminished such that officers only needed reasonable suspicion of a crime. Defendant Linder was on a probated twenty-year sentence for the serious felony offenses of burglary and criminal attempt to commit armed robbery. He previously violated the terms of

probation by using marijuana and avoided a revocation hearing, along with the prospect of imprisonment, by agreeing to additional terms of probation that included a warrantless search condition.  He also agreed to conditions requiring he report to Officer Ray as directed and allow Officer Ray to visit him at his home.  Furthermore, the basis for the search was a strong odor of marijuana, and Defendant Linder's prior probation violation was for marijuana use.

Precedent confirms Defendant, as a direct consequence of these prior actions and decisions, diminished his privacy rights to such a degree his home could be searched without a warrant based on reasonable suspicion.  See, e.g., Yuknavich, 419 F.3d at 1308-11 (upholding warrantless search for child pornography because defendant committed prior probation violation, search was relevant to underlying conviction, and other conditions of probation regulated computer use); United States v. Carter, 566 F.3d 970, 973-75 (11th Cir. 2009) (upholding search despite absence of search condition in part because of condition requiring defendant to "submit to visits by the probation officer at his home, workplace, or elsewhere"); United States v. Denton, No. CR 111-546, 2012 WL 3871929, at *6-10 (N.D. Ga. June 19, 2012), *adopted by*, 2012 WL 3871927 (N.D. Ga. Sept. 5, 2012) (upholding warrantless search because of probationary status, search condition, and confession to violating conditions in polygraph test).

Defendant Linder argues his search condition is invalid because it was not a part of his original sentence from Judge Gillis and not formally presented to him in the presence of counsel, citing Fox v. State, 527 S.E.2d 847 (Ga. 2000).  In Fox, the superior court judge sentenced a defendant according to the terms of a plea agreement that did not include a

Fourth Amendment waiver or search condition. 527 S.E.2d at 848-49. After sentencing, a probation officer informed the defendant, outside the presence of his attorney or the trial court, his probation conditions included a Fourth Amendment waiver and search condition. Id. The probation officer had the defendant sign a special conditions form, which included the waiver, and attached that form to the trial court's sentencing order. Id. The sentencing court never entered an order to include the waiver as part of the probation conditions. Id. The Georgia Supreme Court held there was a lack of consent to the waiver because it was not a part of the plea negotiation process and was not accepted as an alternative to prison. Id. at 849. Therefore, the Fourth Amendment waiver could not be relied upon to support a warrantless search. Id.

Here, in material contrast, Defendant Linder committed a probation violation by testing positive for marijuana and admitted as much to the probation officer. (Doc. nos. 56-2, 56-3.) To avoid a probation revocation hearing and the prospect of revocation, Defendant Linder waived the hearing and accepted the conditions necessary to enter the DRC program. Judge Gillis, the sentencing judge, approved and signed the waiver and additional conditions as an order of the court. (Doc. nos. 56-2, 56-3.) The absence of defense counsel is not a concern because Defendant had no right to counsel. See Banks v. State, 620 S.E.2d 581, 583 (Ga. Ct. App. 2005) (holding no right to attorney for probation violation proceedings). For these reasons, Fox does not apply and the Fourth Amendment waiver is valid.

Defendant Harden argues the search was not valid because the officers did not submit an advance request to search the home to Defendant Linder, as the Fourth Amendment waiver allegedly requires. (Doc. no. 44, pp. 7-8.) The waiver provides in full as follows:

> Probationer shall submit to a search of his (her) person, residence, papers, vehicle, and/or effects as these terms of the Fourth Amendment to the United States Constitution are defined by the Courts, any time of the day or night with or without a search warrant whenever requested to do so by a Probation Supervisor or any law enforcement officer and specifically consents to the use of anything seized as evidence in a judicial or disciplinary proceeding.

The waiver required Defendant Linder to submit unconditionally to any search the officers deemed necessary, and the mere fact Defendant Linder was not present to accept an invitation he had no right to refuse falls far short of rendering the search unreasonable and a violation of the Fourth Amendment.

Just as importantly, the key inquiry is not whether the search conditions were legally valid or properly followed, but instead whether Defendant Linder had a diminished expectation of privacy requiring only reasonable suspicion for a warrantless search of the home.  The Denton court explained as much, stating "the issue is not whether Denton waived his Fourth Amendment rights, but whether the Search and Seizure provision that was a condition of his probation and of which Denton was aware, diminished his expectation of privacy sufficiently to render a search based only on reasonable suspicion lawful under the Fourth Amendment . . . ."  Denton, 2012 WL 3871929, at *7; see also Yuknavich, 419 F.3d at 1308-11 (finding diminished expectation of privacy despite absence of search condition); Carter, 566 F.3d at 973-75 (same).

> **B.      The Strong Odor of Green Marijuana Emanating from Defendants'
> Residence Created Reasonable Suspicion of a Crime**

The Supreme Court in Knights defined reasonable suspicion as "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable."   534 U.S. at 121 (citation omitted).   "When making a

determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." Yuknavich, 419 F.3d at 1311 (quoting United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003)).  The officer must "'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id. (internal quotation marks and citations omitted).

The strong odor of green marijuana inside the residence, detected by Officer Ray and Sergeant Roland even as they approached the residence, gives rise to not only reasonable suspicion but also probable cause.  See United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991) (finding probable cause because agent smelled odor of marijuana through open house door); United States v. Cartwright, 183 F. Supp. 3d 1348, 1355 (M.D. Ga. 2016) (same); see also United States v. White, 593 F.3d 1199, 1203 (11th Cir. 2010) (finding "smell of marijuana alone may provide a basis for reasonable suspicion").

Defendant Harden argues the odor of marijuana could not give rise to reasonable suspicion of Defendant Linder committing a crime because he was not present at the house at the time, and the odor could only implicate occupants of the home at the precise moment officers detected it.  (Doc. no. 44, p. 8.)  The smell of green marijuana wafting from Defendants' known residence clearly qualifies as reasonable suspicion as to Defendant Linder, especially in light of his prior history of testing positive for marijuana while on probation.  One can commit the offense of marijuana possession and distribution without being physically present at the home at the precise moment officers arrive and detect the marijuana odor.

11

**C.**     **The Search Is Valid as To Defendant Harden Because She Did Not Object**

Contrary to Defendant Harden's assertions, the search of the residence she shared with Defendant Linder is valid because of her failure to communicate any objection to the search.  By signing and unequivocally agreeing to the DRC special conditions, Defendant Linder consented to warrantless searches of his residence.  See, e.g., United States v. Baker, 599 F. App'x 904, 906 (11th Cir. 2015) (referring to probation search condition as consent to search condition); Owens, 681 F.2d at 1364 (same).

One tenant's consent to a search is valid against all cotenants so long as the consenting party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."  United States v. Matlock, 415 U.S. 164, 170 (1974).  Common authority simply means mutual use of the property or area with joint access or control.  United States v. Watkins, 760 F.3d 1271, 1279-80 (11th Cir. 2014); see also People v. Robles, 3 P.3d 311, 315 (Cal. 2000) ("[I]f persons live with a probationer, shared areas of their residence may be searched based on the probationer's advance consent.")  The rule makes sense because "any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."  Watkins, 760 F.3d at 1279-80 (quoting Matlock, 415 U.S. at 171.)

However, a tenant's "express refusal of consent to a police search is dispositive as to him, regardless of the consent of [a cotenant]."  Georgia v. Randolph, 547 U.S. 103, 122-23 (2006).  No court within the Eleventh Circuit has had, until now, the occasion to consider application of Randolph when consent is by way of a probationer's Fourth Amendment

12

waiver.  In <u>United States v. Blake</u>, 284 F. App'x 530, 535-37 (10th Cir. 2008), the Tenth

Circuit applied <u>Randolph</u> and upheld a warrantless home search where the defendant's wife

was on probation with search conditions, their home was searched pursuant to those

conditions, and the husband who was present did not object to the search.

It is undisputed Defendants were cohabitants of the house and shared the bedroom

and closet where officers located the marijuana, methamphetamine, and firearm.  (Body

Camera, 06:30-10:00; FTR 10:39:00 – 10:42:00.)  Defendant Linder thus clearly possessed

common authority over the search area and enjoyed joint access and control.  It is also

undisputed Defendant Harden never objected when Sergeant Roland announced his intention

to search the home pursuant to the search term in Defendant Linder's probation conditions.

Her failure to object renders the search constitutional as to Defendant Harden pursuant to

<u>Randolph</u>.

Defendant Harden argues the officers' display of authority and pronouncement of

intent to search the home pursuant to Defendant Linder's search condition cowed her into

silence and prevented her from expressing any objection to the search, citing <u>Bumper v.

North Carolina</u>, 391 U.S. 543, 550 (1968).  In <u>Bumper</u>, an officer claimed to have a warrant

to search the defendant's home and, not knowing otherwise, the defendant's grandmother

consented by saying "go ahead."  391 U.S. at 548-50.  However, the officer did not have a

warrant, and the Supreme Court held consent could not validate an otherwise illegal search,

explaining as follows:

> The issue thus presented is whether a search can be justified as lawful
> on  the  basis  of  consent  when  that  "consent"  has  been  given  only  after  the

official conducting the search has asserted that he possesses a warrant.  We hold that there can be no consent under such circumstances.

When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.  This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.  A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion.  Where there is coercion there cannot be consent.

Id.

Bumper does not apply for at least two reasons.  First, because a warrant was never returned by the searching officers in Bumper, the only basis for admission of the evidence was free and voluntary consent of the homeowner, who merely said "go ahead" when officers declared a search warrant provided them the right to search.  Id. at 550 n.15.  Here, in contrast, the searching officers did not need free and voluntary consent of Defendant Harden in order to conduct a search of the home.  Instead, the burden was on Defendant Harden to express an objection to the search, which she never did.  Second, there is no suggestion of chicanery here like there was in Bumper.  Sergeant Roland correctly informed Defendant Harden of the search condition's existence and properly declared his intent to search the home based on that condition.

Finally, the Court finds the officers did not act in such a coercive or aggressive manner that a reasonable person in Defendant Harden's position would not have believed she was free to voice an objection to the search.  None of the police behavior captured on the

video footage, or described by the witnesses, suggests the officers acted in a manner designed or sufficient to intimidate, coerce, or silence Defendant Harden.  They merely approached the home, entered upon Defendant Harden's invitation, questioned the occupants concerning the marijuana odor, confirmed the search condition, announced the intention to search, and conducted the search.  While the Court could not find decisions analyzing police conduct in this same context, the Eleventh Circuit has found similar police conduct did not defeat the free and voluntary nature of consent to search a residence.  See, e.g., United States v. Ramirez-Chilel, 289 F.3d 744, 751 (11th Cir. 2002) (holding consent valid and not product of coercion from show of authority where three officers approached residence without weapons drawn, knocked and announced presence, and explained reason for visit).

## IV.  CONCLUSION

The Court **REPORTS** and **RECOMMENDS** Defendants' motions to suppress be **DENIED**.  (Doc. nos. 44-46.)  Defendant Harden's motion to suppress statements made after her arrest fails because it is entirely dependent on the motion to suppress evidence found during the search.

SO REPORTED and RECOMMENDED this 21st day of June, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA